UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

CALVIN DWAYNE SANGSTER,         )
                                )
        Movant,                 )
                                )
    vs.                         )         Case No. 4:08CV1841 CDP
                                )
UNITED STATES OF AMERICA,        )
                                )
        Respondent.             )

## MEMORANDUM AND ORDER

Calvin Dwayne Sangster has filed a motion to vacate, set aside, or correct

sentence under 28 U.S.C. § 2255.  Sangster pleaded guilty to knowingly and

intentionally possessing with the intent to distribute more than five grams of crack

cocaine in violation of 21 U.S.C. § 841(a)(1).  Sangster was classified as a career

offender under Section 4B1.1(a) of the U.S. Sentencing Guidelines Manual and

sentenced to the minimum advisory guideline sentence of 188 months.  Case No.

4:07CR410 DJS.  He did not appeal.

Sangster asserts ten grounds for correcting or vacating his sentence.  His

fifth ground alleges that his counsel was ineffective for failing to investigate his

mental condition.  All of the other claims are based on his argument that he should

not have been sentenced as a career offender and that he was promised his sentence

would not exceed 87 months.  Most of these grounds are framed as claims of

ineffective assistance of counsel, although two are framed as claims of

prosecutorial misconduct or Due Process violations.[1]  Having carefully reviewed

the evidence and arguments, I conclude that all of Sangster's claims are

conclusively refuted by the record of his plea and sentence, and I will therefore

deny the § 2255 motion.[2]

## Background

On May 14, 2007, Sangster sold a confidential informant 2.3 grams of crack

cocaine.  At the conclusion of the sale, Sangster gave the informant his phone

number in order to facilitate future transactions.  The informant returned three days

later, on May 17, 2007, and purchased another 6.9 grams of crack cocaine from

Sangster.  After the second sale, Sangster was arrested and charged with violating

21 U.S.C. § 841(a)(1).  Sangster does not object to the circumstances of his arrest

or the factual basis of the charges against him.

Sangster pleaded guilty before the Honorable Donald J. Stohr (now retired)

on September 21, 2007.  At the time, Sangster was 38 years old and he had

completed tenth grade but had not graduated from high school.  He had previously

---

[1]Sangster asserts nine grounds for vacating or altering his sentence in his initial motion
under § 2255 and he asserts an additional basis for challenging his sentence in his first amended
motion under § 2255.

[2]In his criminal case, Sangster has a pending motion to reduce his sentence based on the
recent amendments to the crack cocaine sentencing guidelines.  That matter has been assigned to
a different judge, and I do not consider it here.  Whether it is granted or denied does not affect
the outcome of this § 2255 motion.

been convicted of several crimes including burglary, possession of a controlled substance, and unlawful use of a weapon.

The plea agreement included a partial estimate of Sangster's offense level, but explicitly disclaimed that the estimate was complete or binding. In the agreement, the parties recommended a base offense level of 26, with a three-level reduction of his offense level for acceptance of responsibility. The agreement explicitly did not attempt to calculate Sangster's Criminal History Category. The agreement stated that the determination of his criminal history would be left to the court after the Probation Office reviewed Sangster's criminal records and warned that "[p]rior convictions can affect the sentence and usually result in a harsher sentence." Not including any adjustments based on Sangster's criminal history, the parties estimated that Sangster's "total offense level may be 23." Both parties reserved their right to challenge the presentence investigation report's criminal history findings. The plea agreement states that the "parties understand that the District Court is neither a party to nor bound by the Guidelines recommendation agreed to in this document."

At the plea hearing, Judge Stohr questioned Sangster about his reasons for pleading guilty and his understanding of the terms and effect of the guilty plea. Sangster acknowledged that he had reviewed the plea agreement with counsel, that he did not disagree with anything in the agreement, and that no one had made any

other or different promise or assurance to get him to plead guilty. The judge

informed Sangster that he faced a maximum penalty of forty years imprisonment

and a mandatory minimum sentence of five years imprisonment. The court

engaged in the following dialogue with Sangster:

> Do you understand the Court will not be able to determine a Guideline
> computation for your case until the presentence report has been
> completed, and both you and the Government have had an opportunity
> [to] challenge the facts reported by the probation officer; do you
> understand this?
>
> Yes.
>
> Do you understand that the sentence imposed may be different than
> any estimate your attorney may have given you; do you understand
> that?
>
> Yes.
>
> Do you also understand . . . the Judge has the authority to impose a
> sentence that is more severe or less severe than the sentence called for
> by the guidelines . . . . ?
>
> Yes.
>
> Do you also understand that if the sentence is more severe than you
> expected, you'll still be bound by your plea and have no right to
> withdraw it; do you understand that?
>
> Yes.

The presentence report concluded that Sangster qualified as a career offender

under United States Sentencing Guidelines § 4B1.1(a) because he had prior

convictions for second degree burglary and sale of a controlled substance. As a

career offender his base offense level was 34. After deducting three levels for acceptance of responsibility, Sangster was assigned a total offense level of 31. Because he was a career offender, his Criminal History Category was VI. Based on a total offense level of 31 and Criminal History Category of VI, Sangster's sentencing guideline range was 188 to 235 months. If Sangster had not been classified as a career offender, his total offense level would have been 23, and his Criminal History Category would have been IV, which would have resulted in a sentencing guidelines range of 70 to 87 months.

Neither Sangster nor the government filed any objections to the presentence report before sentencing. At the sentencing hearing, both counsel stated that the presentence report calculations showing a guidelines range of 188 to 235 months were correct. Sangster's attorney also addressed the court, personally vouched for Sangster's character and argued that Sangster's list of convictions did not accurately reflect the seriousness of Sangster's criminal behavior because some of his convictions were for minor infractions and some of his criminal behavior was driven by his own drug addiction. Counsel pointed out that Sangster had never been a violent person, despite his convictions.

When Sangster was given the opportunity to address the court, he stated:

First of all, I'd like to thank my attorney for his efforts. I'd like to also apologize to my family, society, and most of all God, for my actions. And Judge, when you sentence me, can you please have some sort of leniency on me. And that's it.

The prosecutor made no statements regarding the sentence. The court sentenced Sangster to 188 months, the bottom of the advisory guideline range. After Judge Stohr pronounced the sentence and informed Sangster of the conditions of supervised release, he asked if there were any requests for recommendations to the Bureau of Prisons. Counsel asked for a recommendation that Sangster be housed close to St. Louis. Sangster said nothing further.

## Analysis

Sangster challenges his sentence on several grounds, most of which argue that he received constitutionally ineffective assistance of counsel. Sangster also directly challenges the guidelines sentencing calculation in his case and claims that his Due Process rights were violated by the government's conduct. I will deny Sangster's motion because the facts show that Sangster's counsel's conduct did not prejudice Sangster, his sentence was correctly calculated under the guidelines, and there was no violation of his Due Process rights.

### A.   The Guidelines Calculations

Sangster argues that his 1987 second degree burglary conviction should not have been considered a qualifying crime of violence for career offender purposes because: (1) it was not a crime of violence, and (2) he was a minor when he committed the offense. Neither argument is correct.

Under § 4B1.1, the career offender enhancement applies if the defendant had "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). A "crime of violence" is defined as:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that–
>
>> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>>
>> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2. The Eighth Circuit has repeatedly held that a conviction for a violation of Missouri's second degree burglary statute is a conviction for a crime of violence under the "otherwise involves" provision of § 4B1.2, "whether the 'inhabitable structure' [] unlawfully entered was a house, car, boat, airplane, or other 'inhabitable structure,' [because] there existed the risk of a violent confrontation between [defendant] and the occupant, the police, or another third party." *United States v. Cantrell*, 530 F.3d 684, 695-696 (8th Cir. 2008); *see also United States v. Owens*, 596 F.3d 430, 432 (8th Cir. 2010); *United States v. Stymiest*, 581 F.3d 759, 768-69 (8th Cir. 2009). Therefore, Sangster's 1987 second degree burglary conviction was properly considered a crime of violence, despite Sangster's arguments that the presentence report did not provide adequate factual information to make that determination.

Sangster's argument the conviction should not have counted because he was a minor is similarly unpersuasive. A prior felony conviction counts towards a defendant's career offender status if it is "a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year." U.S.S.G., § 4B1.2, comment 1. "A conviction for an offense committed prior to age eighteen is an adult conviction if it is classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted." U.S.S.G., § 4B1.2, comment 1. The record is undisputed that Sangster was convicted as an adult for second degree burglary in 1987. Therefore, regardless of Sangster's age at the time he committed the burglary, his 1987 second degree burglary conviction qualifies as a prior felony conviction.

## B.     Ineffective Assistance of Counsel

A movant faces a heavy burden to establish ineffective assistance of counsel under § 2255. *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996). "To establish a claim for ineffective assistance of counsel, a § 2255 movant must demonstrate that counsel's representation was deficient and that he suffered prejudice as a result." *Theus v. United States*, 611 F.3d 441, 447 (8th Cir. 2010); (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Because a movant must establish both elements of this test in order to succeed, if the movant fails to demonstrate either deficient performance or prejudice, the court need not address

the other element.  *Apfel*, 97 F.3d at 1076.  "To show prejudice, the movant must demonstrate that there is a reasonable probability that the outcome would have been different but for counsel's deficient performance."  *Theus*, 611 F.3d at 447.

### 1.    Failure to Obtain a Mental Evaluation (Ground Five)

Sangster argues that his attorney provided constitutionally ineffective assistance by failing to present evidence of Sangster's mental state at sentencing and for failing to obtain a mental evaluation.  But the mental health history that Sangster argues should have been raised were contained in the presentence report, and so the issues were in front of the sentencing judge.  And there is no evidence that he was not competent to proceed or that any further evidence of his mental condition would have lead to a reduced sentence.

Sangster argues that his attorney should have informed the court about his son's death, his grandmother's illness, and his history of depression and substance abuse.  At the sentencing hearing, Sangster's attorney informed the court of Sangster's history of drug abuse and the recent death of Sangster's grandmother. In addition, the presentence investigation report, which the court adopted, stated that Sangster's "son died in 2005, at the age of seven, from injuries suffered in a house fire," and that "defendant was reportedly diagnosed with depression at the age of 19 . . . [while] he was a patient  . . . for inpatient drug treatment."  The report also indicated that Sangster's depression was not severe and that Sangster's doctors

believed "that the depression stemmed from" his substance abuse. Because the court received and relied upon all the evidence that Sangster faults his attorney for failing to present, Sangster has not shown that his attorney performed deficiently or that he was prejudiced on this basis.

Similarly, there is no indication that Sangster's counsel was ineffective for failing to investigate further his mental condition. Sangster does not allege that he has any undiscovered mental issues. Instead, he only argues that his attorney should have sought a mental evaluation as a part of his general duty to investigate his client's case. But counsel had no reason to believe that Sangster suffered from any mental condition that might warrant a variance from the guidelines range under 18 U.S.C. § 3553(a) or a downward departure under Sentencing Guidelines § 5H1.3. That provision states that "[m]ental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines." U.S.S.G. §5H1.3 (2010). And while § 3553(a) directs the Court to consider the history and characteristics of the defendant, nothing requires a mental evaluation for every defendant who has had tragedy in his life.

There is no evidence that Sangster has ever suffered from a mental health issue severe enough to warrant a departure or variance under the guidelines. The

only evidence is that Sangster suffered from depression that did not require treatment and that was dependent on substance abuse. A reasonable defense attorney would not see this as reason to seek a mental evaluation. Although Sangster had suffered tragedies in his life, so have most defendants (and so have most people who do not commit crimes), and the existence of tragedy is not a reason for counsel to seek a mental evaluation. Counsel had no reason to suspect that Sangster was not competent or that his mental condition was in any way unusual, and therefore counsel was not ineffective in this respect.

### 2. Alleged Deal for 87 Months (Grounds One and Two)

Sangster argues that his attorney provided ineffective assistance of counsel by misleading him about the possible sentence he could face if he pleaded guilty. Sangster claims that his attorney told him that he would face a maximum sentence of only eighty-seven months if he pled guilty. Sangster's attorney provided an affidavit claiming that he never told Sangster that he would receive a sentence of eighty-seven months, and Sangster has provided affidavits from family members stating that he would not have pled guilty if he had known that he would face a sentence higher than eighty-seven months. Sangster argues that this dispute warrants an evidentiary hearing, but I disagree. Sangster's own statements to Judge Stohr at the guilty plea, as well as his signing and acknowledging the plea agreement, conclusively refute this claim, so no hearing is needed.

Generally, a movant cannot show he was prejudiced by counsel's inaccurate sentencing advice if, before pleading guilty, he was informed of the maximum possible sentence and the court's ability to sentence within that range. *United States v. Quiroga*, 554 F.3d 1150, 1155 (8th Cir. 2009) (noting that there is "abundant circuit precedent holding that inaccurate advice of counsel about the sentencing guidelines or likely punishment does not render involuntary a defendant's decision to plead guilty, so long as the defendant is informed of the maximum possible sentence permitted by statute and the court's ability to sentence within that range."); *see also Tinajero-Ortiz v. United States*, 635 F.3d 1100 (8th Cir. 2011). In *Tinajero-Ortiz*, the defendant challenged his sentence by claiming that his attorney provided ineffective assistance by giving him inaccurate sentencing advice. *Tinajero-Ortiz*, 635 F.3d at 1104-06. Defendant's attorney allegedly promised defendant that he would receive a sentence of five years if he pled guilty. *Id.* However, the court ultimately sentenced the defendant to ten years. *Id.* On appeal, the court found that the defendant did not demonstrate *Strickland* prejudice, despite his attorney's inaccurate advice, because defendant had been informed of the correct sentencing range and he was informed that his guidelines sentencing range "could be different from what his attorney had predicted" before he pled guilty. *Id.* at 1105.

At the plea hearing here Judge Stohr correctly informed Sangster that he faced a maximum sentence of 40 years imprisonment, and Sangster acknowledged that he understood that. The plea agreement said the same thing. Sangster's plea agreement stated that his sentence would be determined based on the recommendation of the probation office and the discretion of the sentencing judge, and at the hearing the judge explicitly told Sangster that his sentence was not guaranteed and that he could not withdraw his guilty plea if he received a sentence higher than expected. Sangster stated that he understood these things.

Sangster acknowledged reading and understanding the plea agreement, stated that he agreed when the prosecutor summarized the agreement, and stated that no one had made any other promises to him or otherwise pressured him to plead guilty. "Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Sangster's arguments now are completely inconsistent with his statements at the time of his plea. Because this claim is conclusively refuted by Sangster's own statements at the plea hearing, I need not hold a hearing. *See United States v. Cole*, 389 Fed. App'x 565, 566 (8th Cir. 2010) (defendant's plea hearing testimony that he was not promised a specific sentence is sufficient to rebut his later claim that his plea was not voluntary because he had been promised a specific sentence).

Sangster's conduct at the sentencing hearing also belies his claim here. When given the opportunity to speak, Sangster asked generally for lenience, but said nothing about an 87 month promise. And of course, after he was sentenced to 188 months in prison, Sangster did not do anything that would have indicated he thought there had been a different deal.

Because there is no evidence that there was ever a promise for an 87 month sentence, I will deny this claim of ineffective assistance of counsel.

### 3. Failure to Object to Career Offender Classification (Grounds Three, Four, Seven, Nine & Ten)

As discussed above, Sangster was properly classified as a career offender under the Sentencing Guidelines. Therefore, his claims that his counsel was ineffective for failing to argue otherwise must fail. *See Champion v. United States*, 319 Fed. App'x 443, 446 (8th Cir. 2009) (movant asserting a claim of ineffective assistance of counsel for failing to object to a sentencing calculation cannot show prejudice if the sentence was correctly calculated).[3]

---

[3]Sangster also argues that counsel should have objected to the government's failure to provide notice of Sangster's classification as a career offender. But the government has no duty to provide notice of a career offender enhancement. *See United States v. Watson*, 332 Fed. App'x 341, 343 (8th Cir. 2009); *United States v. Abanatha*, 999 F.2d 1246, 1251 (8th Cir. 1993). And Sangster has admitted that he learned of the presentence report's conclusion that he was a career offender and discussed it with his counsel at least two weeks before sentencing, so there could be no prejudice from counsel's failure to object to a supposed lack of notice.

### 4. Failure to Argue that Criminal History was Overstated (Ground Eight)

Sangster argues that his attorney was ineffective for failing to seek a lower sentence based on an argument that his criminal history was overstated. But Sangster's attorney did address this at sentencing, when he stated that despite Sangster's convictions, he had never been a violent person. Although counsel did not specifically argue that Sangster's criminal history was overstated and that the Court should vary or depart under § 4A1.3(b)(1) of the sentencing guidelines, he was not ineffective for failing to do so.

A downward departure based on the inadequacy of a defendant's criminal history may be warranted, if "reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3(b)(1). The presentence report indicated that Sangster had been convicted of several drug and weapons charges and repeatedly violated the terms of his probation, including committing the instant offense while he was on probation for a prior conviction for possession of cocaine base. Although Sangster may have also been convicted of less serious offenses, Sangster's repeated drug and weapons charges were sufficient to make a downward departure under § 4A1.3(b)(1) or a variance under § 3553(a) inappropriate on this basis. As

a result, he cannot show that he was prejudiced by his attorney's failure to explicitly seek a downward departure or variance based on his criminal history.

In addition, Sangster's attorney's approach to addressing Sangster's criminal history was not unreasonable. "Under the [performance] element, there is a strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance and sound trial strategy." *Toledo v. United States*, 581 F.3d 678, 680 (8th Cir. 2009) (quotations and citations omitted). Counsel noted that he had known Sangster since he was a child and stated that Sangster had "never been a violent person. He's always been a person that got along with everyone." He stressed that Sangster's crimes were driven by his own drug addiction, rather than malice. Sangster has not shown that his attorney's performance at sentencing was unreasonable.

## C. Prosecutorial Misconduct (Ground Six and Supplemental Motion)

In Ground Six Sangster argues that his Due Process rights were violated because the government withheld relevant information while the parties discussed Sangster's plea agreement. Specifically, Sangster claims that, although the plea agreement indicated that Sangster's total offense level "may be 23," the government knew Sangster would qualify as a career offender and that his guideline sentence would be much greater. Additionally, in his supplemental

motion, Sangster argued that the prosecutor committed misconduct by failing to point out that the burglary conviction was not a crime of violence.

As stated above, the burglary conviction *was* a crime of violence, and Sangster was properly sentenced as a career offender, and so the claim that the prosecutor withheld evidence is simply wrong. And Sangster's Due Process argument fails because he has provided no factual basis for his claim that the government knew what his ultimate total offense level would be. And of course, Sangster was repeatedly informed in the plea agreement and at the plea hearing that he was not guaranteed any particular sentence and that his criminal history would affect his sentence.

"Due process requires that a guilty plea be made knowingly, intelligently, and voluntarily." *Gregory v. Solem*, 774 F.2d 309, 314 (8th Cir. 1985). "The standard for a valid guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Id.* An accused need only be informed of the direct consequences of his plea, not the indirect or collateral consequences. *See George v. Black*, 732 F.2d 108, 110 (8th Cir.1984). Generally, a defendant's misunderstanding of the "sentencing guidelines or likely punishment does not render involuntary a defendant's decision to plead guilty, so long as the defendant is informed of the maximum possible

sentence permitted by statute and the court's ability to sentence within that range."
*United States v. Quiroga*, 554 F.3d 1150, 1155 (8th Cir. 2009).

There is no evidence that any information was withheld from Sangster or that the government committed misconduct in any way. While the plea agreement did not specifically contemplate that Sangster would be a career offender, it also did not promise that he would not be, and it stressed that the calculations contained in it were non-binding estimates. And even at sentencing the government did not advocate for any particular sentence, so there can be no claim that the government somehow went back on any recommendations in the plea agreement.

## Certificate of Appealability

As Sangster has not made a substantial showing of the denial of a federal constitutional right, this Court will not issue a certificate of appealability. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (citing *Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994) (substantial showing must be debatable among reasonable jurists, reasonably subject to a different outcome on appeal or otherwise deserving of further proceedings).

Accordingly,

**IT IS HEREBY ORDERED** that movant's motions to vacate, set aside, or correct sentence [## 1, 27] are DENIED.

**IT IS FURTHER ORDERED** that movant's omnibus motion [#10] and his motion to appoint counsel [#34] are DENIED.

A judgment in accord with this Memorandum and Order is entered separately today.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 8th day of November, 2011.